**MCGUIREWOODS LLP**
Piper A. McCormick (SBN #291482)
pmccormick@mcguirewoods.com
1800 Century Park East, 8th Floor
Los Angeles, CA 90067
Telephone: 310.315.8250
Facsimile: 310.315.8210

Christian T. Hochhausler (SBN #351475)
chochhausler@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111
Telephone: 415.490.0872
Facsimile: 415.490.0942

Elizabeth Z. Timmermans (NC State Bar No. 40205) (*admitted pro hac vice*)
Elizabeth F. Pellegrini (NC State Bar No. 56560) (*admitted pro hac vice*)
eztimmermans@mcguirewoods.com
epellegrini@mcguirewoods.com
501 Fayetteville Street, Suite 500
Raleigh, NC 27601
Telephone: 919.755.6600
Facsimile: 919.755.6699

Attorneys for Defendant
Bank of America, N.A.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAI CAO,<br><br>            Plaintiff,<br><br>      vs.<br><br>BANK OF AMERICA, N.A., and DOES 1-10, INCLUSIVE,<br><br>            Defendants. | CASE NO. 3:24-cv-01195-JD<br><br>The Hon. James Donato<br><br>**DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date: June 11, 2026<br>Time; 10:00 a.m.<br>Place: 450 Golden Gate Avenue<br>       Courtroom 11<br>       San Francisco, CA 94103<br>Judge: Hon. James Donato |

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................. 1

I.    INTRODUCTION.......................................................................................................... 1

II.   ARGUMENT ................................................................................................................. 2

    A.    The ACDV 103 Dispute Code Defined the Nature of the Dispute, and BANA Investigated it Correctly. ............................................................. 2

        1.    Plaintiff's Interpretation of Gorman is Incorrect.............................. 2

        2.    BANA's Investigations in Response to the 2022 ACDVs Were Reasonable ................................................................................ 3

    B.    The CITA Claim Fails Under the Clear and Convincing Evidence Standard. ................................................................................................... 4

    C.    *Shoraka* is an Out-of-District Case that is Distinguishable and Does Not Control This Case. ............................................................................... 5

    D.    Punitive Damages are Barred. ........................................................................ 7

    E.    Emotional Distress Damages are Barred, and Alternatively, Unsupported. ................................................................................................ 8

    F.    Plaintiff Cannot Establish Credit Damages..................................................... 9

    G.    Plaintiff Misstating the Evidence is Not A Basis to Deny Summary Judgment. ................................................................................................. 12

III.  CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Banga v. Experian Info. Solutions, Inc.*,
   473 Fed. App'x 699 (9th Cir. 2012) ........................................................................................ 10

*Colorado v. New Mexico*,
   467 U.S. 310 (1984) ..................................................................................................................5

*Crabill v. TransUnion LLC*,
   259 F.3d 662 (7th Cir. 2001) ................................................................................................. 10

*Gorman v. Wolpoff & Abramson, LLP*,
   584 F.3d 1147 (9th Cir. 2009) .........................................................................................2, 4, 8

*Grigoryan v. Experian Info. Solutions, Inc.*,
   84 F. Supp. 3d 1044 (C.D. Cal. Dec. 18, 2014) .................................................................... 10

*Gross v. CitiMortgage, Inc.*,
   33 F.4th 1246 (9th Cir. 2022) ...................................................................................................5

*Iolab Corp. v. Seaboard Sur. Co.*,
   15 F.3d 1500 (9th Cir. 1994) .................................................................................................. 11

*Jones-Adams v. Equifax Info. Servs. LLC*,
   2025 U.S. Dist. LEXIS 24739 (W.D. Wash. Feb. 11, 2025) ....................................................6

*Lara v. Experian Info. Sols., Inc.*,
   625 F. Supp. 3d 1062 (S.D. Cal. 2022) ....................................................................................7

*Moeller v. Taco Bell Corp.*,
   966 F. Supp. 2d 899 (N.D. Cal. 2013) ......................................................................................2

*Nykiel v. Borough of Sharpsburg Police Dep't*,
   778 F. Supp. 2d 573 (W.D. Penn. 2011) ...................................................................................3

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007) ....................................................................................................................7

*Shoraka v. Bank of America, N.A.*,
   2023 U.S. Dist. LEXIS 224493 (C.D. Cal. Dec. 13, 2023)........................................... 1, 5, 6, 7

*Weinberg v. Whatcom County*,
   241 F.3d 746 (9th Cir. 2001) .................................................................................................. 10

**Federal Statutes**

15 U.S.C. § 1681n(a)(2) .................................................................................................................. 7

15 U.S.C. § 1681s-2(b)(1)(B).......................................................................................................... 4

15 U.S.C. § 1681s-2(b)(1)(D) ......................................................................................................... 4

**State Statutes**

Cal. Civ. Code § 1785.31(a)(2)(B) .................................................................................................. 7

Cal. Civ. Code § 1798.93 ................................................................................................................ 7

Cal. Civ. Code § 1798.93(c)(6)(B).................................................................................................. 4

DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Despite 25 pages of self-serving narrative, Plaintiff fails to create a genuine dispute of material fact on any element of his remaining claims. The undisputed record remains: the Account was opened by Plaintiff, BANA always reported the Account as current and never derogatory, and Plaintiff admitted as much under oath. Plaintiff's opposition fails to consider that the FCRA and CCRAA claims at issue are tethered to the ADCV disputes, which asked BANA to investigate whether the Account was fraudulently opened. Plaintiff has admitted under oath that the Account *was not fraudulently opened*.  That admission is fatal to those claims.

Rather than submit a declaration, Plaintiff's opposition relies entirely on deposition testimony and documents purportedly authenticated by counsel, and his very testimony affirmatively defeats his claim. Plaintiff admitted the Account is his. He admitted the Account has never been delinquent. He admitted he could pay off the balance in a single payment but chooses not to do so. And he offered no expert declaration or report to rebut BANA's expert's conclusion that Plaintiff's FICO scores remained excellent throughout the relevant period and that the Account was never reported as derogatory. In fact, Plaintiff failed to submit evidence beyond his deposition testimony and therefore failed to meet his burden showing that there is an existence of genuine issue of material fact for trial. Summary judgment should be granted in favor of BANA for this reason alone.

As further discussed below, the scope of BANA's investigation under dispute code 103 was reasonable as a matter of law. Plaintiff's reliance on a factually distinct, out-of-district case, *Shoraka*, is not controlling and must be disregarded. That case involved completely different facts and different investigations and is therefore irrelevant. Additionally, Plaintiff fails to allege an inaccuracy and each of his damages theories are foreclosed as a matter of law. Summary judgment should be granted in favor of BANA.[1]

_____

[1] Plaintiff's Opposition appears to conflate two different concepts: (1) indirect disputes Plaintiff made to the CRAs through ACDVs, which are only actionable under the FCRA and CCRAA claims

## II.    ARGUMENT

### A.    The ACDV 103 Dispute Code Defined the Nature of the Dispute, and BANA Investigated it Correctly.

#### 1.    *Plaintiff's Interpretation of* Gorman *is Incorrect*

Plaintiff relies heavily on footnote 11 of *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir. 2009), to argue that the scope of an FCRA investigation is essentially unlimited once an investigator opens a file. ECF No. 85 ("Opp.") at 10. But *Gorman* held that "the pertinent question is . . . whether the furnisher's procedures were reasonable in light of what it learned about the nature of the dispute *from the description in the CRA's notice of dispute*." 584 F.3d at 1157 (emphasis added). The court explained that "[i]t is from this notice that the furnisher learns the nature of the consumer's challenge to the reported debt, and it is the receipt of this notice that gives rise to the furnisher's obligation to conduct a reasonable investigation." *Id*. While footnote 11 clarifies that the notice does not "cabin[] the scope of the investigation once undertaken," it does not impose an affirmative obligation on furnishers to investigate every conceivable theory of fraud beyond what the CRA communicated. *Id*. at 1157 n.11.

The distinction is critical. Under *Gorman*, the CRA's notice defines the nature of the dispute to be investigated. *Id*. at 1157. Here, both CRAs selected code 103 ("claims true identity fraud, account fraudulently opened. Provide or confirm complete ID.").[2] ECF No. 79-1 ("McCormick

---

(and not the CITA claim), and (2) direct disputes Plaintiff made to BANA, which are only actionable under the CITA claim (and not the FCRA and CCRAA claims). For sake of clarity, BANA reiterates that under the statutory language and binding case law, the only investigations relevant to the FCRA and CCRAA claims are the ACDVs BANA responded to on May 4, 2022 and May 11, 2022, and the only investigations relevant to the CITA claim are the direct investigations BANA completed on January 13, 2021; August 13, 2021; October 5, 2021; and July 6, 2022.

[2] Plaintiff's Opposition briefly refers to an ACDV submitted in 2025, over a year after the Third Amended Complaint was filed. Opp. at 8-9. However, this ACDV was not discussed in the operative Complaint and the operative complaint was never amended to include allegations relating to the 2025 ACDV. *See generally* ECF No. 31 (TAC discusses 2022 ACDVs specifically). Accordingly, the Court should disregard any facts or arguments regarding the 2025 ACDV. *See Moeller v. Taco Bell Corp.,* 966 F. Supp. 2d 899, 907-08 (N.D. Cal. 2013) (granting motion for partial summary judgment where the plaintiff sought damages for claims that arose after the operative complaint was

Decl."), ¶ 23, Ex. 12. A 103 code means the consumer is claiming the entire account was fraudulently opened. ECF No. 79-2, Ex. 17 at 7:12-18. BANA cannot change the code selected by the CRA. *Id*. at 23:1-4. BANA investigated exactly what it was asked to investigate: whether Plaintiff opened the Account. BANA's investigation was based not only on the dispute code chosen by the CRA, but also the information Plaintiff submitted and his April 8, 2022 letter ("April 2022 Letter") in which he stated "I believe that I have been a victim of identity theft and I am writing to dispute the account information in my file. *These accounts were a result of the identity theft and are not mine.* I do not owe these debts and I am not going to pay them." McCormick Decl. ¶ 20; ECF No. 79-1, Ex. 10 (emphasis added). BANA's conclusion that the Account was not fraudulently opened was objectively and verifiably correct, as Plaintiff has admitted. ECF No. 79-2, Ex. 13 ("Pl.'s Dep.") at 118:19-21 ("Q. Are you contending that the account itself is not yours or just the charge from Costco? A. Just the charge.").

### 2.    *BANA's Investigations in Response to the 2022 ACDVs Were Reasonable*

Plaintiff argues that the ACDV images attached to Plaintiff's disputes described an account takeover claim, or ACDV dispute code 104, not the account opening fraud that the CRAs coded as 103. Opp. at 12. Therefore, Plaintiff argues that BANA should have investigated the claims as account takeover claims, and not as account opening fraud claims, which require different investigation steps. This is clearly not the case—and both CRAs interpreted the documents as raising a 103 dispute and therefore advised BANA to investigate as such.

Jose Camey, the only ACDV analyst deposed in this case, testified that he had access to Plaintiff's historical account notes and the attachments to the ACDV and that he reviewed both when responding to the ACDV. ECF No. 85-1, Ex. 41 at 9:1-5; Declaration of Elizabeth Timmermans ("Timmermans Decl."), Ex. 44 at 40:21-25. BANA's 30(b)(6) representative testified that ACDV investigators review the attachments to the ACDV and investigate the claim

---

filed); *Nykiel v. Borough of Sharpsburg Police Dep't*, 778 F. Supp. 2d 573, 587 (W.D. Penn. 2011) (holding claim not alleged in complaint cannot be brought up at the summary judgment stage and proper procedure was for the plaintiff to amend the complaint in accordance with FRCP 15(a)).

accordingly. Dkt. 85-1, Ex. 27 at 144:13-145:1. The attachments to the ADCV included the April 2022 Letter, wherein Plaintiff disputed opening the Account. ECF No. 79-1, Ex. 10. Mr. Camey agreed with the two CRAs that the language in this letter—which was attached to both ACDVs— indicated a 103 (account opening) dispute. ECF No. 85-1, Ex. 41 at 51:5-52:13.This made clear that the claim was related to the account opening, and the CRAs both interpreted it as such when they assigned the 103 dispute code. Accordingly, BANA investigated what it was asked to investigate: whether the Account was fraudulently opened.

Even accepting Plaintiff's narrative, BANA's investigation was reasonable under any standard and BANA is therefore entitled to summary judgment for the FCRA and CCRAA claims. *Gorman* is clear that summary judgment is appropriate on reasonableness "when only one conclusion about the conduct's reasonableness is possible." 584 F.3d at 1157. Here, only one conclusion is possible: BANA investigated the dispute as presented, reached a conclusion that Plaintiff admits is correct, and reported that conclusion to the CRAs.

Critically, the *Gorman* court emphasized that "the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate. *Id*. at 1161. Here, BANA's conclusion was not only reasonable, it was *correct*. The Account is Plaintiff's, it always was Plaintiff's—a fact that Plaintiff has admitted under oath and does not dispute. BANA's investigation was reasonable and summary judgment should be granted in BANA's favor.

**B.      The CITA Claim Fails Under the Clear and Convincing Evidence Standard.**

Plaintiff argues that the "diligence" of BANA's investigation is a jury question even under the heightened clear and convincing standard. Opp. at 20-21. But Plaintiff conflates "diligent investigation" with "investigation outcome favorable to the consumer." CITA imposes civil penalties only if the victim of identity theft proves, by *clear and convincing evidence*, that "the claimant failed to diligently investigate the victim's notification of a possible identity theft." Cal. Civ. Code § 1798.93(c)(6)(B).

BANA investigated Plaintiff's direct fraud dispute on four separate occasions, each time analyzing multiple data points, including chip authentication, activation records, transaction patterns, geographic location, and absence of aggressive usage. Plaintiff's characterization that BANA conducted "four iterations of the same constrained process," Opp. at 21, ignores that each investigation examined different factual bases (the Charge, the Charge again with Plaintiff's documentation, a re-evaluation with additional Visa authentication data, and an account-opening claim) and involved four different analysts. No reasonable juror could find, by clear and convincing evidence, that these four investigations constituted a "failure to diligently investigate."

**C.    *Shoraka* is an Out-of-District Case that is Distinguishable and Does Not Control This Case.**

Plaintiff devotes considerable space to discussing the factually distinct, out-of-district case *Shoraka v. Bank of America, N.A.*, 2023 U.S. Dist. LEXIS 224493 (C.D. Cal. Dec. 13, 2023), arguing that Plaintiff's record is "stronger than *Shoraka*'s on every dimension that matters." Opp. at 16. In *Shoraka*, the plaintiff was challenging three charges made in Turkey, and the ACDV forms said that the consumer had never traveled to that country and did not make the charges. But Plaintiff ignores the fundamental distinctions between *Shoraka* and the case at bar.

In the case at bar, BANA was asked to investigate whether the *Account* was fraudulently opened, which it did and confirmed the Account was not fraudulently opened. Furthermore, the inaccuracy element is fundamentally different here than it was in *Shoraka*. In *Shoraka*, the account was being reported as derogatory—the very hallmark of a factual inaccuracy that an FCRA investigation should have uncovered. *Shoraka*, 2023 U.S. Dist. LEXIS 224493, at *7. Here, by contrast, the Account was *never* reported as derogatory. It was always reported as current, with timely payments, and Plaintiff admits as much. Pl. Dep. at 117:5-11.

Under the FCRA framework, a plaintiff must make a "prima facie showing of inaccuracy" before the reasonableness inquiry is even considered. *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022). The plaintiff in *Shoraka* could point to an alleged inaccuracy—derogatory credit reporting entries—whereas here, Plaintiff cannot point to any comparable inaccuracy; his account status was accurately reported at all times. Absent a showing of inaccuracy, the

reasonableness inquiry never arises, and summary judgment is appropriate regardless of *Shoraka*. *See Sanchez*, 643 F. Supp. 3d at 1033-34 (granting summary judgment where the plaintiff failed to identify an inaccuracy in her credit report when viewing the tradeline as a whole); *Jones-Adams v. Equifax Info. Servs. LLC*, 2025 U.S. Dist. LEXIS 24739, at *4 (W.D. Wash. Feb. 11, 2025) (finding there was nothing inaccurate about the credit reporting when the plaintiff's factual submissions confirmed he maintained a balance due on his account).[3]

In addition, Plaintiff's own conflicting representations gave BANA an independent and legitimate basis for skepticism that was entirely absent in *Shoraka*. The *Shoraka* plaintiff consistently maintained one position: the charges were made outside of the country and were fraudulent. Here, by contrast, Plaintiff told the CRAs that the *entire Account* was not his and it was "a result of identity theft" and he did "not owe these debts." He later admitted under oath that the Account was his and he only disputed the Charge. Pl.'s Dep. at 118:19-21. As a result, when comparing his ACDV disputes with his direct disputes, the conflicting representations gave BANA a reasonable basis to question Plaintiff's credibility. Indeed, BANA's investigation notes state that the final direct dispute (reviewed in July 2022) was denied because the documents showed conflicting statements from customer. ECF No. 79-1, Ex. 6 at 4. The investigator acknowledged that some documents, like the police report, asserted that the Charge was unauthorized, but the previously submitted April 2022 Letter stated the card was a result of identity theft and not his, he did not owe these debts and was not going to pay them. *Id*. A furnisher that denies a direct fraud claim after receiving contradictory information from the consumer is not acting unreasonably, it is exercising exactly the kind of judgment the FCRA contemplates.

---

[3] Plaintiff's theory that the Account *balance* is reporting inaccurately is a red herring. BANA reported (and continues to report) the Account balance as it existed in its records – a balance that included the Charge and the monthly payments Plaintiff continues to make. McCormick Decl. ¶ 16; ECF No. 79-2, Ex. 18 at 27. Whether the Charge was authorized is the subject of a billing dispute, not a credit reporting inaccuracy. The FCRA does not require a furnisher to resolve an underlying billing dispute in the consumer's favor to avoid liability.

In sum, *Shoraka* is fundamentally distinguishable from the facts of this case and does not control. Plaintiff has not shown an inaccuracy in his credit reporting, and for that reason alone, summary judgment should be granted in favor of BANA.

### D. Punitive Damages are Barred.

Plaintiff argues that statutory punitive damages under 15 U.S.C. § 1681n(a)(2) and Cal. Civ. Code § 1785.31(a)(2)(B) survive the Court's dismissal of punitive damages. Opp. at 19-20. This argument fails because Plaintiff never pleaded statutory punitive damages in the TAC's Prayer for Relief. *See* ECF No. 31 at Prayer for Relief. The only punitive damages request in the Prayer for Relief was under § 3294, which the Court dismissed with prejudice and without leave to amend. Plaintiff cannot now recharacterize his punitive damages theory through briefing what he failed to plead in the operative complaint.

Even if statutory punitive damages survived the Court's order (they did not), Plaintiff has not shown and cannot show willfulness.[4] To prove a willful violation, a plaintiff must show not only that the defendant's interpretation was objectively unreasonable, but also that the defendant "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007); *Lara v. Experian Info. Sols., Inc.*, 625 F. Supp. 3d 1062, 1074 (S.D. Cal. 2022).

Plaintiff's willfulness theory focuses on the ACDV investigations conducted by Mr. Camey and Ms. Lopez in 2022. Opp. at 18-20. Plaintiff contends that because Mr. Camey acknowledged the images attached to the ACDV "sound[ed] more like a code 104" (account takeover) rather than the 103 code (account opening), the bank "knew its duty" to investigate the takeover claim but failed to do so. But this misrepresents the testimony Plaintiff cites. Mr. Camey was asked generally "if the credit bureaus coded it as a 103 and then you saw an image where the person claims that their credit card was stolen and activated by a thief, does that sound more like a 103 or 104 to you?" ECF No.

---

[4] Punitive damages are not available under the CITA. *See* Cal. Civ. Code § 1798.93. Therefore, even if punitive damages were available to Plaintiff (they are not), he would only be able to make an argument for punitive damages under the FCRA and CCRAA claims.

85-1, Ex. 41 at 21:20-25. Mr. Camey responded that "if they're claiming it was stolen it would be a 104. . . . If you're saying they're saying that the account was stolen before they even knew the account existed, that's a 104." Timmermans Decl., Ex. 44 at 22:1-5. Mr. Camey also testified that the language in the April 2022 Letter—which was attached to both ACDVs—indicated it would be a 103 dispute. ECF No. 85-1, Ex. 41 at 51:5-52:13.

Moreover, this argument does not establish willfulness. Even if Mr. Camey acknowledged that certain images taken out of context could result in the CRAs selecting a different dispute code, that is not the same as knowing that the bank's investigation violated the FCRA. BANA's understanding that an ACDV with a 103 code from the CRA triggers an investigation into whether the account was fraudulently opened is simply correct. Under *Gorman*, the furnisher's obligation is measured by "what it learned about the nature of the dispute from the description in the CRA's notice of dispute." 584 F.3d at 1157. An interpretation of the FCRA that permits a furnisher to investigate the dispute as coded by the CRA is precisely what *Gorman* held was permissible. *Id*. at 1160 ("We agree that whether a reinvestigation conducted by a furnisher in response to a consumer's notice of dispute is reasonable depends in large part on the allegations provided to the furnisher by the credit reporting agency." (internal marks omitted)).

### E.      Emotional Distress Damages are Barred, and Alternatively, Unsupported.

Plaintiff argues that the Court only dismissed the standalone intentional infliction of emotional distress and negligent infliction of emotional distress tort claims (Counts III and IV) and that emotional distress damages remain available as a category of damages under the surviving statutory claims. Opp. at 21-22. This argument misreads the Court's orders.

The Court's discovery order at ECF No. 63 states that "the request for Cao's medical records is denied. The Court dismissed with prejudice the claims for emotional distress in the third amended complaint." This language was not limited to Counts III and IV. It referenced "the claims for emotional distress in the third amended complaint" broadly, and the Court used this as the basis for denying BANA's request for medical records. Barring evidence of medical records makes sense where emotional distress damages are foreclosed across all remaining claims.

DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Even if emotional distress damages are available (they are not), Plaintiff's deposition testimony is insufficient to create a triable issue because he fails to present evidence of causation. For the FCRA and CCRAA claims specifically, Plaintiff's alleged distress must relate specifically to the ACDV investigations—that is, BANA's response to the 103-coded dispute asking whether the Account was fraudulently opened.

Plaintiff's asserted emotional distress related primarily to (1) receiving monthly payment reminders on an Account that he could pay off in a single payment but chooses not to, (2) time-zone differences when calling BANA from overseas, and (3) transaction alerts on cards entirely unrelated to BANA. Pl.'s Dep. at 153:22-24, 164:4-6, 165:12-19, 167:21-24. None of this is tethered to the specific statutory violations alleged.

Furthermore, Plaintiff presents no diagnosis, no treatment, no professional (or non-professional) corroboration, and no medical evidence of any kind to support his emotional distress allegations. While "objective evidence" may not be required, Plaintiff fails to corroborate his allegations and cannot even submit a declaration attesting to his purported emotional distress. In Passantino v. Johnson & Johnson Consumer Prods., Inc., 212 F.3d 493, 513 (9th Cir. 2000), a case Plaintiff relies on, the court noted the significance of the corroboration: the plaintiff's emotional distress was "corroborated by her husband and sister" and she sought counseling from her pastor. Id. Here, Plaintiff does not present any evidence of corroboration. His conclusory and uncorroborated assertions are untethered to any specific act by BANA in responding to the ACDVs and are therefore insufficient to create a triable issue on damages. See Coomes v. Edmonds Sch. Dist. No. 15, 816 F.3d 1255, 1259 n.2 (9th Cir. 2016) ("The non-moving party must show more than the mere existence of a scintilla of evidence. The non-moving party must do more than show there is some "metaphysical doubt" as to the material facts at issue. In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor.").

### F.      Plaintiff Cannot Establish Credit Damages.

Plaintiff argues that "[u]nder [the] FCRA, [he] need not show that [BANA's] reporting was the sole cause of his damages. He need only show it was a "substantial factor."  Opp. at 23-24.

DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Plaintiff does not have any response to BANA's argument that he cannot establish credit damages under the CITA and CCRAA. Even under that standard, Plaintiff must produce some admissible evidence linking BANA's reporting to the alleged harm. *See Weinberg v. Whatcom County,* 241 F.3d 746, 751 (9th Cir. 2001) ("Where discovery has been completed, summary judgment is appropriate when a party challenged by motion fails to offer evidence supporting an element of a claim on which that party bears the burden of proof at trial. Because [plaintiff] failed to offer competent evidence of damages, dismissal on summary judgment was appropriate with respect to all claims for which [plaintiff] bore the burden of establishing the amount of actual harm he suffered as a result of [defendant's] action."); *Banga v. Experian Info. Solutions, Inc.*, 473 Fed. App'x 699, 700 (9th Cir. 2012) ("The district court properly granted summary judgment on [plaintiff's] claims for negligent violations under § 1681o of the [FCRA] because she failed to raise a triable dispute as to whether defendants' conduct resulted in actual damages."); *Grigoryan v. Experian Info. Solutions, Inc.*, 84 F. Supp. 3d 1044, 1084-85 (C.D. Cal. Dec. 18, 2014) (granting summary judgment where the plaintiff could not show how defendants' alleged FCRA and CCRAA violations proximately caused any purported damages); *Crabill v. TransUnion LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages."). Plaintiff has submitted no evidence whatsoever of any credit damages and therefore failed to meet his burden to survive summary judgment. *Coomes*, 816 F.3d at 1259 n.2 ("The moving party initially bears the burden of proving the absence of a genuine issue of material fact. Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case. Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial.").

Plaintiff has no adverse action letter from Capital One, no documents explaining the reason for the denial, and admitted in his deposition that he does not know why Capital One denied his application. Despite BANA's discovery requests seeking written information concerning credit denials or loss of credit, Plaintiff failed to produce any documents relating to the Capital One denial.

CASE NO. 3:24-cv-01195-JD

DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

A bare denial without any evidence linking it to BANA's reporting is insufficient to create a triable issue. As Plaintiff has not come forward with any evidence supporting that BANA's actions proximately caused the Capital One denial, the Court should disregard Plaintiff's purported credit damages stemming from the Capital One denial. *See Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1506 n.4 (9th Cir. 1994) ("[C]ausation . . . may be decided as a matter of law if, under undisputed facts, reasonable minds could not differ.").

Moreover, the Chase denial Plaintiff complains of is insufficient to prove credit damages. The Chase adverse action letter listed three reasons for denial: "too many accounts with balances, Business too new, and You have too many active accounts or too much available credit." ECF No. 79-2, Ex. 24. None of these reasons specifically references BANA's reporting or the Account balance. Indeed, Plaintiff was a credit card "churner" with at least 11 accounts with balances and approximately 21 active credit card accounts at the time, meaning he had plenty of available credit. ECF No. 79-2, Ex. 18 at 18. Plaintiff also applied for the Chase business card for a business that did not exist. Just like the Capital One denial, Plaintiff fails to show that BANA's actions proximately caused the Chase denial.

Regarding the Chase denial, Plaintiff argues that the Account was "one of those accounts with a balance" and that a reasonable juror could conclude that "but for the disputed balance, Cao would have had one fewer account with a balance." Opp. at 24. But this is pure speculation. The Chase denial letter listed three independent reasons, none of which singles out the BANA balance. The "substantial factor" standard requires more than the bare assertion that removing one of 11 accounts with balances might, hypothetically, have changed the outcome.

Lastly, putting aside the evidentiary issues with Plaintiff's purported credit damages, the undisputed record shows Plaintiff was approved for two different credit cards on August 2, 2021 and November 18, 2021, during which time the Account was reporting on Plaintiff's credit reports with the disputed balance. These approvals demonstrate that BANA's reporting was not preventing Plaintiff from obtaining credit and undercut any claim that BANA's reporting caused credit harm. ECF No. 79-2, Ex. 18 at 27-31.

CASE NO. 3:24-cv-01195-JD
DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**G.     Plaintiff Misstating the Evidence is Not A Basis to Deny Summary Judgment.**

Throughout the Opposition, Plaintiff misrepresents or misstates the written evidence in this case, trying to create confusion where there is none. For example, Plaintiff emphasizes that BANA's investigators could not contact consumers, merchants, or outside parties, and that ACDV responders had a fifteen-minute target per investigation. Opp. at 13. This misrepresentation is misleading. Mr. Camey testified that he does not feel rushed when performing his ACDV investigations and that he can take longer to perform if necessary. Timmermans Decl., Ex. 44 at 44:7-14. Mr. Camey also testified that it was not BANA's policy to make phone calls to the consumer or merchant as part of the investigation, but that he can call certain parties, such as external banks, to verify information if needed. ECF No. 85-1, Ex. 41 at 11:20-12:20. Moreover, Mr. Paxton, the individual who performed the investigation in response to Plaintiff's request for a second review of his direct dispute, testified that he could call whomever he thought was necessary in connection with his investigation. Timmermans Decl., Ex. 45 at 30:13-31:4. As another example, Plaintiff asserts that BANA "did not give Camey access to the documents Cao had submitted to the bank in 2021—the FOIA travel records, the hotel receipt, the phone records" and "he could not access the loan servicing notes." Opp. at 7. Again, this is incorrect and misleading. Mr. Camey testified he has access to "all historical account notes." Timmermans Decl., Ex. 44 at 40:21-41:10. These incorrect characterizations of the evidence should be disregarded. Plaintiff cannot survive summary judgment by misstating the evidence in an effort to create a material issue of fact where there are none.

**III.     CONCLUSION**

For the foregoing reasons, and the reasons set forth in BANA's opening brief, BANA respectfully requests that the Court enter an Order granting its motion for summary judgment and dismissing the Third Amended Complaint in its entirety.

DATED: June 1, 2026                    **MCGUIREWOODS LLP**

                                       By:    */s/ Elizabeth Z. Timmermans*
                                              Elizabeth Z. Timmermans
                                              Elizabeth F. Pellegrini
                                              Christian T. Hochhausler
                                              Piper A. McCormick

                                              *Attorneys for Defendant Bank of America. N.A.*

DEFENDANT BANK OF AMERICA, N.A.'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2026, I electronically filed the foregoing document entitled **DEFENDANT BANK OF AMERICA, N.A.'S, NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** with the Clerk of the Court of the United States District Court, Northern District of California, using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

/s/ Elizabeth Z. Timmermans

Elizabeth Z. Timmermans
